IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


PEARLEAN WARREN                    :
                Plaintiff          :
                                 :
      v.                   :        3:CV-09-0946
                                 :        (JUDGE VANASKIE)
LUZERNE COUNTY, LUZERNE COUNTY     :
CORRECTIONAL FACILITY, GENE        :
FISCHI, GREGORY SKREPENAK,         :
STEVEN A. URBAN,                   :
WISTER YUHAS, ROBERT PAYNE,        :
MARYANNE C. PETRILLA               :
                Defendants        :

MEMORANDUM

Following her termination from employment as a Correctional Officer at the Luzerne

County Correctional Facility ("LCCF"), Plaintiff, Pearlean Warren, brought the above-captioned

employment discrimination suit seeking damages pursuant to state and federal law.  Named

defendants in the action include: Luzerne County; LCCF; Warden Gene Fischi; and Prison

Board Members and County Commissioners Gregory Skrepenak, Maryanne C. Petrilla, Steven

A. Urban, Wister Yuhas, and Robert Payne.  (Amend. Comp., Dkt. 3, at ¶¶ 5-13.)[1]  Plaintiff

contends that her rights were violated when she was terminated after allegedly testing positive

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted.  The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

for cocaine on a drug screening test. (Id.)  Defendants filed a motion to dismiss, claiming that Plaintiff's claims were not properly pled.[2]  Because Plaintiff has agreed to withdraw certain claims and a number of Plaintiff's claims have not been properly pled, Defendants' Motion to Dismiss will be granted. Defendants are not, however, entitled to a qualified immunity defense at this time.  Plaintiff will be afforded an opportunity to file an amended pleading that cures the deficiencies of her current complaint, if she can do so in good faith.[3]

I. Background

Plaintiff is a 56 year-old African American woman.  (Id. at ¶ 14.)  She was employed as a Correctional Officer at the LCCF for approximately seventeen (17) years.  (Id. at ¶ 15.)

On or around March 6, 2008, Plaintiff attended a party and smoked a cigar.  (Id. at ¶ 16.)  The following day, March 7, 2008, Plaintiff reported for duty at LCCF at 3:00 p.m.  (Id. at ¶ 17.)  At approximately 9:45 p.m. that evening her replacement told her she was to report to the Main Prison for a drug test.  (Id. at ¶ 18.)  Plaintiff went to the Main Prison and "took a drug test

---

[2] Defendants Motion to Dismiss and Briefs submitted in support of that motion did not challenge Count IV, asserting a claim under the Age Discrimination in Employment Act, and Count VIII, asserting a claim under the Pennsylvania Human Relations Act.  Accordingly, the sufficiency of the statement of those claims will not be addressed in this decision.

[3] "In the Third Circuit, it is well-settled that a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws."  Regan v. Upper Darby Twp., No. Civ. A. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009); see Kelly v. York County Prison, No. Civ. A. 4:CV-08-1813, 2008 WL 4601797, at *2 (M.D. Pa. Oct. 15, 2008) ("a prison or correctional facility is not a person within the meaning of § 1983").  Accordingly, Plaintiff's claims against LCCF will be dismissed.

which did not include a 'split screen' which is listed as mandatory in the Defendant's Correctional Institution's Policy." (Id. at ¶ 19.)

LCCF requires that all drug testing follow the "Mandatory Guidelines for Federal Work Place Drug Testing Programs." (Id. at ¶ 20.) The guidelines require that a Medical Review Officer receive all test results, be a licensed physician, and discuss the results of any drug tests with the individual. (Id. at ¶ 21.)

Plaintiff asserts that these Guidelines were not followed and that Warden Gene Fischi "told the Plaintiff about a positive test which had never been given to a Medical Review Officer." (Id. at ¶ 22.) "Plaintiff requested that a split sample be tested at a different or the same Department of Health and Human Service Lab which was not done." (Id. at ¶ 23.)

On March 13, 2008, Plaintiff was suspended without pay. (Id. at ¶ 26.) On March 14, 2008, Plaintiff underwent another drug screening for over nine hundred (900+) drugs. (Id. at ¶ 24.) This drug test would reflect any previous drug use for up to two to three weeks. (Id.) The results of this test were negative except for Rantadine (Zantac), a prescription drug. (Id.)

On April 28, 2008, Plaintiff was discharged for having allegedly tested positive for cocaine. (Id. at ¶ 27.) Plaintiff asserts that "[w]hile drug testing was to be done randomly, the Plaintiff was selectively prosecuted because of her age, race and gender." (Id. at ¶ 25.) She additionally contends that she has "been subjected to a continuing policy of harassment and intimidation constituting a hostile work environment." (Id. at ¶ 28.)

On May 19, 2009, Plaintiff commenced this action. (Comp., Dkt. 1.) On June 3, 2009, an amended complaint was filed. (Amend. Comp., Dkt. 3.) Plaintiff seeks remedies for: 1) discrimination, hostile work environment, and termination under the Age Discrimination in Employment Act (ADEA) 29 U.S.C. § 621 et seq.; 2) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq.; 3) violation of the her First, Fourth, Sixth, and Fourteenth Amendments rights pursuant to 42 U.S.C. §§ 1981, 1983, and 1985; 4) violation of the Pennsylvania Human Relations Act (PHRA) 43 P.S. § 955(a) et seq.; 5) conspiracy; and 6) intentional infliction of emotional distress. (Id.) On July 20, 2009, Defendants filed the pending motion to dismiss. (Mt. Dis., Dkt. 5.) The Motion has been fully briefed and is ripe for review.

II. Discussion

A.    Standard of Review

The court's task on a Rule 12(b)(6) motion to dismiss for failure to state a claim is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). The court, however, need not accept as true a complaint's "bald assertions" or "legal conclusions." In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well-pled facts, but rather tests the legal foundation of the plaintiff's claims.

United States v. Marisol, Inc., 725 F. Supp. 833, 836 (M.D. Pa. 1989).

The Supreme Court recently abrogated its longstanding decision in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), which had held that a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court retired this "no set of facts" language in favor of a new standard: a plaintiff's obligation to state a claim for relief under Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). As a result of Twombly, plaintiffs were required to nudge their claims "across the line from conceivable to plausible." Id. To state a claim consistent with the language of Fed. R. Civ. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations sufficient "to raise a right to relief above a speculative level." Id. "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). As such, courts may dismiss a complaint if it fails to "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Twombly, 550 U.S. at 562.

Moreover, the Court's more recent decision in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950

(May 18, 2009), held that the pleading requirements of Rule 8 mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" and the complaint should be dismissed. Id.

B.      Section 1981

Defendants seek dismissal of Plaintiff's section 1981 claim contending that there is no private right of action against state entities under section 1981. (Mt. Dis., Dkt. 6, at 8.) Plaintiff has agreed to withdraw her section 1981 claim. (Opp. Br., Dkt. 15, at 4.) Accordingly, Plaintiff's section 1981 claim will be dismissed.

C.      Section 1983

Defendants' Motion to Dismiss attacks Count II of Plaintiff's Amended Complaint insofar as it asserts Fourth Amendment illegal search and seizure and Fourteenth Amendment denial of due process and equal protection claims.[4] (See Dkt. 6, at 14-16.) The Fourth and

---

[4] Count II of Plaintiff's Amended Complaint also includes claims pursuant to the First and Sixth Amendments. (See Am. Comp., Dkt. 3, at ¶ 30.) Defendants did not included challenges to the viability of these claims in their Motion to Dismiss. In their reply brief, however, Defendants argue that "Plaintiff makes no argument to defend any claim under the First or Sixth Amendment in her brief and, therefore, those claims should likewise be considered abandoned." (Rep. Br., Dkt. 18, at 2-3.) As Defendants did not challenge the First and Sixth Amendment claims, Plaintiff would be under no duty to defend those claims.

Fourteenth Amendment claims will be address separately.

### 1. Search and Seizure

In Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 617 (1989), the Court found that the collection and testing of both urine and blood "intrudes upon expectations of privacy that society has long recognized as reasonable . . . [and] must be deemed searches under the Fourth Amendment." "It is well established that the government's collection and testing of an employee's urine constitutes a search under the Fourth Amendment . . . ." Mollo v. Passaic Valley Sewerage Cm'rs, No. 07-1655, 2009 WL 5216976, at *8 (D.N.J. Dec. 30, 2009). "'The ensuing chemical analysis of the sample to obtain physiological data is also a search covered by the Fourth Amendment." United States v. Sczubelek, 402 F.3d 175, 182 (3d Cir. 2005) (quoting Skinner, 489 U.S. at 616). "Consequently, such a drug testing program must meet the reasonableness requirement of the fourth amendment." Taylor v. O'Grady, 888 F.2d

---

Although Defendants failed to seek dismissal of the First Amendment and Sixth Amendment claims, the Court will dismiss them sua sponte. See Ogden v. Huntingdon County, No. 1:06cv2299, 2007 WL 2343814, *3 (M.D. Pa. Aug. 15, 2007) (quoting Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990) ("If . . . the basis for dismissal is apparent from the face of the complaint, sua sponte dismissal may be appropriate as a means of prompt and efficient disposition of cases that lack 'a shred of a valid claim.'"). The Sixth Amendment involves citizens' rights in criminal prosecutions. U.S. Const. Amend. VI. There are no allegations that Plaintiff was ever arrested or criminally prosecuted and consequently the Sixth Amendment claim in Count II will be dismissed. Furthermore, Plaintiff has alleged no facts to support a claim pursuant to the First Amendment. Plaintiff has failed to allege that her speech caused the alleged action or that she was somehow discriminated against on the basis of her religion. Accordingly, Plaintiff's First and Sixth Amendment claims in Count II will be dismissed.

1189, 1194 (7th Cir. 1989) (citing Nat'l Treasury Employees Union v. Von Raab, 489 U.S. 656 (1989)).  In order for a drug testing program "to survive the required Fourth Amendment balancing, it will be imperative that sufficient safeguards be incorporated to protect 'against the abuse of official discretion in deciding whom and how to search.'" Tanks v. Greater Cleveland Reg'l Transit Auth., 739 F. Supp. 1113, 1123 (N.D. Ohio 1990) (quoting Transp. Workers' Union of Philadelphia v. Se. Pennsylvania Transp. Auth., 863 F.2d 1110, 1121 (3d Cir. 1988)).

> Determining whether a search is reasonable 'depends on all of the circumstances surrounding the search or seizure itself,' and involves balancing 'on the one hand, the degree to which the search intrudes upon an individual's privacy and, on the other hand, the degree to which the search is needed for the promotion of legitimate government interest.'

United States v. Sczubelek, 402 F.3d 175, 182 (3d Cir. 2005) (citations omitted).

In Taylor v. O'Grady, the Seventh Circuit found that urinalysis screening for Department of Corrections officers who had contact with prisoners was reasonable under the Fourth Amendment. 888 F.2d 1189; see McDonell v. Hunter, 809 F.2d 1302, 1308 (8th Cir. 1987) ("urinalyses are not unreasonable when conducted for the purpose of determining whether corrections employees are using or abusing drugs which would affect their ability to safely perform their work within the prison . . . .").  The Eighth Circuit in Booker v. City of St. Louis, 309 F.3d 464, 467 (8th Cir. 2002), observed that "the City has a compelling interest 'in assuring that the activities of employees who come into daily contact with inmates are not [hindered] by drugs and are fully capable of performing their duties' and that, as a correctional officer in a

medium security institution, [plaintiff] had a diminished expectation of privacy." Drug testing of prison officials is necessary, in part, because: 1) the government has an interest in maintaining prison authority; and 2) prison guards who use drugs may be subject to blackmail, if prisoners know of their drug use, or they may try to smuggle drugs to prisoners. See Hansen v. California Dep't of Corr., 920 F. Supp. 1480, 1491-92 (N.D. Cal. 1996).

Plaintiff does not attack Defendants' drug testing policy itself, but alleges that the policy's application to her situation denied her Fourth Amendment rights. Plaintiff alleges that "the method employed by the Defendants' collection and subsequent chemical analysis of the sample was a search and must meet the reasonableness requirement of the Fourth Amendment." (Dkt. 15, at 6.) Because Defendants did not follow the procedures enumerated in the testing guidelines, Plaintiff contends that the drug testing did not meet the reasonableness requirement of the Fourth Amendment. Plaintiff cites no case law in support of this assertion. Moreover, she fails to identify a particular Defendant's role in the alleged illegal search.

In Feliciano v. City of Cleveland, No. C85-3356, 1992 WL 59128 (N.D. Ohio 1992), the Court found that the plaintiffs' right to be secure from an unconstitutional search and seizure were denied when the City:

> provided no notice to the cadets that drug testing would or could occur; directly observed some of the recruits during urination; did not conduct the test in a medical environment; had superior officers, instead of medical personnel (who were in the same building), conduct the observations and collections; had no

> written procedures governing the scope of the analysis of the urine; had no
> written procedures governing whether criminal prosecution would or could result;
> used chemical testing procedures which, though accurate in this case, are widely
> regarded as incomplete; and generally gave unabridged discretion to those
> charged with administering the program.

Id. at *9.  The court found that "without detailed procedures, employers could, in their discretion, invade the privacy of their employees without restriction. The regulations surrounding urinalysis drug testing are in a very real sense a last line of defense, safeguarding the limited privacy left to these employees." Id. at *10.  The Court held that "the failure of the City to follow particular procedures does not automatically make its drug testing of the Recruits unconstitutional." Id.  Accordingly, the court found it appropriate to "weigh not only the government's compelling interests and the employees' substantial privacy interests, but also the adequacy of the government's procedures to protect their employees' privacy interests." Id.

"The fact that the test is not performed by a medical officer is not sufficient to warrant" a finding of a Fourth Amendment violation. Taylor, 888 F.2d at 1199. If "the procedures used are the same, the collection of samples by non-medical personnel does not significantly differ from collection by trained personnel." Id.  The type of test used can also be significant in determining whether a policy or procedure may be deficient, as certain tests may produce a high number of false positives. Feliciano, 1992 WL 59128, at *9.

Plaintiff has alleged that a drug testing program was in place that contained specific guidelines.  She has alleged that those guidelines were not followed prior to her termination.

Failure to follow proper procedure does not automatically make Plaintiff's testing unconstitutional. See Id. Plaintiff has failed to plead any additional facts to support her claim. Plaintiff has not pled what type of test was used, whether anyone was present during the testing, what type of screening was used to test the sample, and whether she was asked and answered any questions prior to the test. She does not allege who was involved in the decision to test and the procedures that were followed. She does not show how Prison Board members and County Commissioners could be held accountable for the alleged infringement of Fourth Amendment rights. Thus, she has not established a plausible claim for relief as to any named Defendant. Accordingly, Count II of Plaintiff's Complaint alleging a Fourth Amendment illegal search will be dismissed, with Plaintiff afforded an opportunity to amend he complaint to identify who she claims is liable for a Fourth Amendment violation and the action taken by the particular Defendant that exposes him or her to liability under section 1983.

   2. Due Process

       Defendants argue that Plaintiff's due process claim in Count II is also without merit. It is Defendants' position that "Plaintiff received adequate due process," as "Defendants had an adequate procedure in place and followed it with respect to Plaintiff's employment termination." (Mt. Dis., Dkt. 6, at 15.) Plaintiff contends that "[f]ailure to follow their own guidelines deprived the Plaintiff of a property interest[ ] in her job without due process of law . . . ." (Opp. Br., Dkt. 15, at 6.)

"In order to state a section 1983 claim based on the Fourteenth Amendment, [the plaintiff] must allege that [she] was deprived of a property interest under color of state law without due process." Dykes v. Se. Pennsylvania Transp. Auth., 68 F.3d 1564, 1570 (3d Cir. 1995). A plaintiff "who seeks to establish a procedural due process claim must demonstrate that '(1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide due process of law.'" Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 219 (3d Cir. 2009) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006)).

> 'To have a property interest in a benefit that is protected by procedural due process, a person clearly must have more than an abstract need or desire for it. She must have more than a unilateral expectation of it. She must, instead, have a legitimate claim of entitlement to it.'

Zugarek v. S. Tioga Sch. Dist., 214 F. Supp. 2d 468, 478 (M.D. Pa. 2002) (quoting Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984)); see Biliski, 574 F.3d at 219 ("'to have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment'"). "[A]n at-will employee has 'no property interest in his or her job sufficient to trigger due process concerns.'" Biliski, 574 F.3d at 219.

Plaintiff has pled that a procedure was in place and was not followed with respect to her termination. Plaintiff alleges that the Mandatory Guidelines for Federal Work Place Drug

Testing Programs was not followed as a licensed physician acting as a Medical Review Officer did not receive all test results and discuss those results with her.  (Am. Comp., Dkt. 3, at ¶ 22.)  At no point in her Complaint, however, does Plaintiff plead any facts to support the assumption that Plaintiff was anything more than an "at-will" employee.  See Biliski, 574 F.3d at 219.  Furthermore, Plaintiff has not alleged facts that raise a plausible inference that she did not have an opportunity to be heard in connection with her suspension and eventual discharge.  As Plaintiff has failed to proffer any facts that support an inference that she had a protected property interest in the position or that she was denied a meaningful opportunity to be heard, Plaintiff's due process claim will be dismissed without prejudice to her right to file a second amended complaint if she can properly plead in good faith the elements of the claim.

### 3. Equal Protection

Defendants contend that Plaintiff has not alleged any facts to support a conclusion that Plaintiff was terminated as a result of race or gender, nor has she alleged that similarly situated employees were treated more favorably.  (Mt. Dis., Dkt. 6, at 15-16.)  "To bring a successful equal protection claim under § 1983, a plaintiff must prove the existence of purposeful discrimination, and demonstrate that [s]he was treated differently from individuals similarly situated."  Bierley v. Grolumond, 174 F. App'x 673 (3d Cir. 2006).  Plaintiff fails to make any allegations that she was treated differently from other similarly situated individuals and fails to argue any facts in support of the claim in her Brief in Opposition to the Motion to Dismiss. (See

Opp. Br., Dkt. 15.)  Accordingly, Defendants' Motion to Dismiss Count II, as it pertains to Plaintiff's equal protection claim, will be granted.  Plaintiff's equal protection claim will be dismissed without prejudice to her right to file a second amended complaint if she can properly plead in good faith the elements of the claim.

D.    Intracorporate Conspiracy

Counts III and VI of Plaintiff's Amended Complaint assert that Defendants conspired against Plaintiff in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Defendants seek dismissal of these Counts, arguing that the intracorporate conspiracy doctrine bars the claims. (Mt. Dis., Dkt. 6, at 16.)  Plaintiff claims in her opposition brief, without any support in the Amended Complaint, that "Fischi conspired with members of the drug testing lab to cause the improper collection and analysis of urine sample. Thus there were outside people who were not members of either Luzerne County Corrections or Luzerne County itself."  (Opp. Br., Dkt. 15, at 7-8.)  Plaintiff's Amended Complaint, however, does not aver that people not associated with the LCCF were involved in the conspiracy.  (See Amend. Comp., Dkt. 3.)

"[I]t is a longstanding rule in the Third Circuit that a mere general allegation . . . or averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient to state a claim.'" Deangelo v. Brady, 185 F. App'x 173, 175 (3d Cir. 2006) (quoting Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)). "To constitute a conspiracy, there must be a 'meeting of the minds.'" Startzell v. City of

14

Philadelphia, Pennsylvania, 533 F.3d 183, 205 (3d Cir. 2008). "In Twombly, the Supreme Court held that general allegations of conspiracy are not sufficient." St. Clair v. Citizens Fin. Group, 340 F. App'x 62, 65 (3d Cir. 2009) (citing Twombly, 550 U.S. at 555). "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." Twombly, 550 U.S. at 556-57.

Under the intracorporate conspiracy doctrine, "an entity cannot conspire with one who acts as its agent." Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003). In this regard, "the intracorporate conspiracy doctrine applies to claims of federal civil rights conspiracy." Shingara v. Skiles, 274 F. App'x 164, 168 (3d Cir. 2008).

Here, Plaintiff's Amended Complaint fails to allege that other parties were involved in the conspiracy. Accordingly, the intracorporate conspiracy doctrine applies and Plaintiff is barred from asserting a claim as an entity cannot conspire with its agents. See Gen Refractories Co., 337 F.3d at 313. Furthermore, Plaintiff's conspiracy claim does not withstand scrutiny under Iqbal or Twombly. See Twombly, 550 U.S. at 556-57; Iqbal, 129 S.Ct. at 1950. Although Plaintiff has alleged that there was a conspiracy, she has not provided any facts to support this conclusion and consequently has not "shown" that she is entitled to relief. See Id. Accordingly, Defendants' Motion to Dismiss Plaintiff's conspiracy claims, Counts III and VI, will be granted.

E.    Title VII

Defendants argue that the gender discrimination and hostile work environment claims in Count V should be dismissed as Plaintiff failed to pursue requisite administrative remedies. (Mt. Dis., Dkt. 6, at 17.)  Plaintiff has asserted that she is no longer pursuing claims of gender discrimination or hostile work environment.  (Opp. Br., Dkt. 15, at 8.)  Accordingly Plaintiff's Title VII gender and hostile work environment claims asserted in Count V of the First Amended Complaint will be dismissed.

F.    Intentional Infliction of Emotional Distress

Defendants assert that "Plaintiff has failed to allege any extreme and/or outrageous conduct" that is "sufficient to state a claim under state law for intentional infliction of emotional distress." (Mt. Dis., Dkt. 6, at 19.)  Plaintiff argues that "whether the conduct was sufficiently outrageous is for the jury." (Opp. Br., Dkt. 15, at 10.)  Plaintiff contends that, while based on an employment situation, the alleged violations of constitutional rights qualify as extreme and outrageous conduct.  (Id.)

To establish a claim for intentional infliction of emotional distress, Plaintiff must show that Defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and be regarded as "atrocious, and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998).  The acts alleged must involve the "most egregious conduct," and thus "it is extremely rare to find conduct in the

employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Id. (quoting Cox v. Keystone Carbon, 861 F.2d 390, 395 (3d Cir. 1988)); see Palma v. Volunteers of Am., No. 04-919, 2006 WL 328352, at *8 (E.D. Pa. Feb. 9, 2006) ("Application of the doctrine is 'most limited' and 'extremely rare' in the employment context."). Intentional infliction of emotional distress claims in employment cases have been limited to instances where "'an employer engaged in both sexual harassment and other retaliatory behavior against an employee.'" Wilkins v. ABF Freight Sys., Inc., No. 03-6610, 2005 WL 2271866, at *9 (E.D. Pa. Sept. 15, 2005) (quoting Hoy, 720 A.2d at 754).

Plaintiff has failed to plead a viable claim of intentional infliction of emotional distress. None of the conduct alleged in the First Amended Complaint, if proven, would amount to extreme and outrageous conduct as a matter of law. See Wilkins, 2005 WL 2271866, at *9. Thus, Plaintiff's intentional infliction of emotion distress claim will be dismissed with Plaintiff being afforded the opportunity to file an amended pleading that cures the deficiencies of her current complaint, if she can do so in good faith.

G.    Punitive Damages

Defendants argue that Plaintiff's claims for punitive damages are without merit. Plaintiff contends that she is suing Defendants in their individual and official capacities and they can be held liable for punitive damages in their individual capacities. (Opp. Br., Dkt. 15, at 9.) Plaintiff,

however, acknowledges that Luzerne County may not be held liable for such damages.  (Id.)

"[M]unicipalities, even when acting in their proprietary capacity, are exempt from punitive damages, unless a statute expressly provides such damage awards against municipalities."

Genty v. Resolution Trust Corp., 937 F.2d 899, 910 (3d Cir. 1991).

> The reason behind this common law prohibition is that an assessment of extraordinary damages against a public entity serves neither the retributive nor the deterrent purposes of the civil punishment and contravenes public policy by punishing the taxpayers and citizens who constitute the very persons who 'are to benefit from the public example which the granting of such damages is supposed to make of the wrongdoer.'

Id.  "The United States Supreme Court has stated that 'considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials.'" Klump v. Nazareth Area Sch. Dist., 425 F. Supp. 2d 622, 643 (E.D. Pa. 2006) (quoting City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)).  Thus, the punitive damage claims against the governmental entity and the individual Defendants in their official capacities will be dismissed.

"'A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Strickland v. Mahoning Twp., 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)); see Lawrence v. City of Bethlehem, 1999 WL 124471, at *5 (E.D. Pa. Mar. 1, 1999) (quoting Smith, 461 U.S. at 56) ("Punitive damages are available in a § 1983 suit against

a public official acting in his individual capacity when the official's 'conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'").

Plaintiff has failed to allege that any individual was motivated by evil motive or that they acted with reckless or callous indifference to her rights.  See Strickland, 647 F. Supp. 2d at 428-29.  Accordingly, Defendants' Motion to Dismiss Plaintiff's claims for punitive damages will be granted.  Plaintiff will be afforded the opportunity to file an amended pleading that cures the deficiencies of her current complaint, if she can do so in good faith.

H.    Qualified Immunity

"The doctrine of qualified immunity shields a local government official from individual liability for civil damages as long as his conduct does not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wyatt v,. Krzysiak, 82 F. Supp. 2d 250, 260 (D. Del. 1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see Manigault v. King, 339 F. App'x 229 (3d Cir. 2009) . "[I]n order to invoke qualified immunity, a defendant must prove that, viewing the facts in a light most favorable to plaintiff, plaintiff has failed to allege a violation of a clearly established constitutional right." Herman v. Carbon County, 248 F. App'x 442, 444 (3d Cir. 2007) (citing Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

Plaintiff's claims premised upon alleged violations of the Bill of Rights have not survived

scrutiny. Thus, there is no need to consider the defense of qualified immunity insofar as those claims are concerned. As to Plaintiff's surviving Title VII and age discrimination claims, Congress did not intend to hold individual employees liable under Title Vii or the ADEA. See Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173 (3d Cir. 1997); Hill v. Borough of Kutztown, 455 F.3d 225, 246 n.29 (3d Cir. 2006). Accordingly, as there is no individual liability for Plaintiff's remaining claims, there is no need to address Defendants' qualified immunity defense at this stage of the case.

## III. Conclusion

For the above-stated reasons, Defendants' Motion to Dismiss will be granted. Plaintiff will be afforded the opportunity to file a second amended complaint with regards to Counts II, III, VI, and VII if she can do so in good faith.[5]

---

[5] Plaintiff's current operative pleading suffers from a substantial defect: it fails to distinguish among the many Defendants, simply asserting that all Defendants are liable on each of the multiple theories of relief asserted. This collective treatment of all Defendants is improper. Plaintiff must allege the specific action or involvement of each Defendant in relation to each claim asserted. For example, it is difficult to discern how County Commissioners named as Defendants could be involved in the alleged Fourth Amendment violation. There is no indication that any County Commissioner had anything to do with how the drug screen was conducted. Plaintiff has not alleged facts from which it may be inferred that there is some other basis for holding County Commissioners liable under section 1983. Twombly and Iqbal demand more than a conclusory assertion that "Defendants individually, jointly and severally . . . denied the Plaintiff her Civil Rights. . .," the manner in which Plaintiff has now pleaded her case. Plaintiff is warned that failure to plead facts that show how a particular Defendant played some role in or otherwise bears liability for the alleged actionable conduct will result in the dismissal of that party from this case.

An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


PEARLEAN WARREN                          :
                        Plaintiff        :
                                         :
        v.                               :     3:CV-09-0946
                                         :     (JUDGE VANASKIE)
LUZERNE COUNTY, LUZERNE COUNTY           :
CORRECTIONAL FACILITY, GENE              :
FISCHI, GREGORY SKREPENAK, TODD          :
VONDERHEID, STEVEN A. URBAN,             :
WISTER YUHAS, ROBERT PAYNE,              :
MARYANNE C. PETRILLA                     :
                        Defendants       :

## ORDER

NOW, THIS 9th DAY OF FEBRUARY, 2010, for the reasons set forth in the foregoing

memorandum, IT IS HEREBY ORDERED THAT:

1.  Defendants' Motion to Dismiss (Dkt. 5) is GRANTED.

2.  Counts II, III, VI, and VII are DISMISSED WITHOUT PREJUDICE.

3.  Count I and the gender and hostile work environment claims in Count V are

DISMISSED WITH PREJUDICE.

4.  All claims against Defendant Luzerne County Correctional Facility are DISMISSED

WITH PREJUDICE.

5.  Within twenty (20) days of the date of this Order, Plaintiff may file a second amended

complaint.  Failure to file an amended complaint will result in the dismissal with prejudice of all

individual Defendants as well as all Counts of the amended complaint with the exception of

Counts IV, V (to the extent it asserts a claim of race discrimination in employment), and VIII.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge